# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 1:16-cr-723 |
| ) | |
| RONALD T. COLEMAN, ) | Hon. Charles R. Norgle |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

After a jury trial, Defendant Ronald T. Coleman ("Defendant") was convicted of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). Before the Court is Defendant's post trial motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, arguing that the Government failed to prove that Defendant is guilty of obstruction of justice, beyond a reasonable doubt. For the following reasons, the motion is denied.

## BACKGROUND

Operation Five Leaf Clover (the "Operation") was a joint Chicago Police Department ("CPD") and Drug Enforcement Administration ("DEA") investigation into the Conservative Vice Lord ("Vice Lords") street gang in Chicago's Douglas Park neighborhood. The Operation was a federal wiretap investigation into heroin trafficking by Rodney Bedenfield ("Bedenfield") and his associates. In March 2013, Defendant was assigned to work with the DEA on Operation Five Leaf Clover as a team leader.

**Underlying Criminal Conduct**

As a member of the investigation team, Defendant participated in the planning of twenty-seven arrest warrants and seven search warrants scheduled to be executed on June 12, 2014. In

his role as a team leader, Defendant was specifically responsible for the apprehension of one of the Operation's targets.

In March 2013, early in the investigation, Bedenfield was identified as the prime mover in the drug trafficking operation. For the fifteen months that followed, until June 2014, agents obtained warrants and conducted wiretaps on Bedenfield's telephone lines. During this period officers intercepted Bedenfield's conversations with, *inter alia*, Dewan Davis ("Davis"), one of his accomplices in the trafficking operation.

Davis is the cousin of Laron Conway ("Conway"). Davis and Conway both attended high school with Defendant and were members of the school's basketball team. At trial, the government established that Defendant and Conway maintained a friendship until present day, coached youth basketball, played in an adult basketball league, and maintained a social relationship.

On June 9, 2014, Conway received a telephone call from an unidentified woman instructing him to call Defendant. That same day, Conway called Defendant who told him that the police were going to execute a search warrant on Davis's house and that Davis should promptly clear out any and all contraband from the house. The next day, June 10, 2014, Conway called Davis to relay the information he had received from Defendant the morning before. Shortly thereafter, Davis called Bedenfield to inform him of the Operation and relay the information he had received from Conway.

Over the next hour Bedenfield and Davis had several conversations about the veracity of the tip and what actions, if any, should be taken, as a result. Eventually, Davis and Bedenfield decided to relocate the contraband. At 1:41 pm on June 10, 2014, surveillance officers witnessed Bedenfield leave his house on the 2100 block of South Spaulding Avenue carrying several bags.

Bedenfield then transported those bags to a residence on the 2100 block of South Christiana Avenue.

The warrants were executed, as scheduled, on June 12, 2014. Furthermore, as a result of Bedenfield's movements two days earlier, the house on the 2100 block of South Christiana Avenue was also searched. There, agents and officers seized heroin, firearms, narcotics trafficking paraphernalia, and large bags.

On November 11, 2016, Special Grand Jury indicted Ronald T. Coleman charging him with a violation of 18 U.S.C. § 1512(c)(2) for "attempt[ing] to, corruptly obstruct, influence, and impede an official proceeding, namely, the federal grand jury investigation of alleged narcotics trafficking by [Bedenfield], and [Bedenfield]'s associates[.]" Indictment as to defendant Ronald T Coleman, CM-ECF No.: 2, 3.

**The Jury Trial**

On November 8, 2016, Defendant was arraigned and pleaded not guilty. Nov. 8, 2016 Order, CM-ECF No.: 10. From August 8, 2017 through August 10, 2017, a jury trial was held and the jury returned a verdict of guilty. See CM-ECF No.: 43-49.

At trial, the government presented evidence that Defendant was guilty of obstruction of justice because he passed sensitive information about an ongoing CPD/DEA investigation and then planned raid of known drug traffickers. First, Sergeant Michael Nunez testified that Defendant was a member of the Operation and that the investigation was into the trafficking activities of the Vice Lords in Chicago's Douglas Park neighborhood. Sargent Nunez also testified that, as a team member, Defendant knew about the targets, subjects matter, and surveillance techniques involved in the investigation. Nunez testified that Defendant observed

3

Bedenfield with Davis and that Defendant knew who both men were based on prior arrest photos, and that at least one of Bedenfield's stash houses would be searched.

Sergeant Nunez testified further that Defendant never disclosed the full extent of his relationship with Davis or his communications with Conway once the Operation was underway. Sergeant Nunez testified that while Defendant disclosed that he knew some of the lead targets from neighborhood basketball games, he never disclosed that he had known Davis since high school. Further, once the June 10, 2014 wiretap revealed a leak from within the department and that Conway was the conduit for the leak, Defendant failed to notify anyone of his conversation by phone with Conway the day before.

Next, the government presented testimony from Conway and Davis who testified that they were cousins and that Defendant had known them since high school. Conway testified that on June 9, 2014, he received a phone call from an unidentified woman who instructed him to call Defendant. He testified that when he called Defendant, Defendant told him that up to twelve houses would be searched, that Davis's would be among them, and that he should call Davis and warn him. Finally, Conway testified that as directed in his conversation with Defendant, he called Davis and warned him of the upcoming raid. Davis then testified consistently that he received a call from Conway, was told of the impending raid, and passed the information to Bedenfield.

The government then presented the wiretapped phone calls between Davis and Bedenfield wherein Davis warned of the pending police raids. Davis told Bedenfield that the police were planning on raiding between ten and twelve houses and that the information came from a "homie on the task force." Government's Resp. to Def.'s Mot for New Trial, 4. Special

Agent Keith Hennings then explained that calls between Defendant and Conway, Conway and Davis, and Davis and Bedenfield were all corroborated by telephone records.

Officer Homer Ramirez testified that following the intercepted telephone calls between Davis and Bedenfield, he was deployed to Bedenfield'ss residence where he observed Bedenfield leaving the house on South Spaulding Avenue with multiple bags. He then testified that he witnessed Bedenfield drive these bags one block over to a residence on South Christiana Avenue and bring the bags inside.

At trial, Officer Jose Almanza testified that during the execution of the search warrant officers discovered five handguns, multiple handgun magazines, a rifle, multiple rifle magazines, copious ammunition, four bags of heroin, two containers of lactose (a cutting agent), a hand mixer, three digital scales, two heat sealers, plastic baggies, and a bill counter.

Finally, Defendant took the stand to give his version of the call between himself and Conway, which was to organize a father's day picnic for the coming weekend. His defense, presented primarily through cross-examination and argument by counsel, was that Davis and Conway colluded to frame him, and that someone else within the task force colluded to pass information to Davis and Bedenfield and had set him up to take the fall. After a two-day trial, the jury quickly returned a verdict finding Defendant guilty of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). Now before the Court is Defendant's post-trial motion requesting a new trial based on the insufficiency of the evidence.

## ANALYSIS

### The Standard of Decision for a Rule 33 Motion

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed R. Crim. P. 33. "A jury verdict in a criminal case is not

5

to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." United States v. Santos, 20 F.3d 280, 285 (7th Cir. 1994). "[C]ourts have interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." United States v. Kuzniar, 881 F.d 466, 470 (7th Cir. 1989). But the rule is typically "reserved for only the most extreme cases" when there is little evidence against the defendant and to let the guilty verdict stand would manifest injustice. Peterson, 823 F.3d at 1122 (internal quotations omitted).

"In [a Rule 33] motion, a court may properly consider the credibility of the witnesses[.]" United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999). The court also "considers whether the verdict is against the manifest weight of the evidence[.]" Id. at 657 (citing Kuzniar, 881 F.2d 466). "The court should grant a motion for a new trial only if the evidence 'preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" United States v. Swan, 486 F.3d 260, 266 (7th Cir. 2007) (quoting United States v. Reed, 875 F.2d 107, 113 (7th Cir.1989)).

**The Interest of Justice Does Not Require a New Trial**

In support of his motion, Defendant argues that he was not proven guilty of obstruction of justice beyond a reasonable doubt because: (1) there was no evidence that Defendant was the individual who provided the information to Conway about the ongoing police surveillance or the impending raids; (2) Defendant's testimony regarding the subject matter of his call with Conway was believable; and (3) even if Defendant did pass the information in question, there was insufficient evidence to prove that he acted corruptly.

Defendant first argues that there is no evidence that Defendant was the individual who provided the information to Conway about the ongoing police surveillance or the impending

raids. He suggests that because there is no recording of the telephone call between himself and Conway on June 9, 2014, or the calls between Conway and Davis the following day the evidence linking him to those phone calls is circumstantial and insufficient. The Court rejects this argument. "[A] verdict may be rational even if it relies solely on circumstantial evidence." United States v. Kruse, 606 F.3d 404, 408 (7th Cir. 2010) (quoting United States v. Warren, 593 F.3d 540, 547 (7th Cir.2010)). Further, at trial Conway testified that on June 9, 2014, at the direction of an unknown woman, he called Defendant and Defendant told him that up to twelve houses would be searched, that Davis's would be among them, and that he should call Davis to warn him. Accordingly, there was sufficient evidence to rationally allow the jury to conclude that Defendant did pass important information about the Operation to Conway, Davis, and Bedenfield. Such evidence is sufficient to establish that the verdict is not against the manifest weight of the evidence.

Next, Defendant argues that because his testimony was credible and unimpeached whereas Conway admittedly lied to Federal Bureau of Investigation ("FBI") agents and prosecutors and, as a result, cannot be trusted over his. At trial, Conway explained that he initially withheld information from the FBI and attendant prosecutors because he did not want to get himself, Davis, or Defendant in trouble. This explanation for Conway's initial lack of candor provides a sufficient basis upon which the jury could believe Conway's testimony.

Furthermore, Defendant's version of events would require the jury to believe that: (1) Conway lied about his call with Defendant; (2) Conway, Davis, and an unknown third party colluded to frame Defendant, and (3) another unknown member of the task force passed information about the Operation to Bedenfield through Davis and Conway. Also, the jury would have to overlook Defendant's failure to inform his superiors of his pre-existing relationship with

7

Davis and his June 9, 2014 phone call with Conway. Because this string of facts is contradicted by the other evidence presented by the government, the jury had a sufficient basis for disbelieving the Defendant. Accordingly, there was sufficient evidence to allow the jury to rationally conclude that Conway provided truthful testimony and Defendant did not.

Lastly, there was sufficient evidence to prove that Defendant acted corruptly. "[A] person acts corruptly if he or she acts with the purpose of wrongfully impeding the due administration of justice. United States v. Edwards, 869 F.3d 490, 497 (7th Cir. 2017). At trial, the government showed that Defendant had a long standing relationship with Davis—a known associate of Bedenfield—and Defendant disclosed information about the operation to Conway to pass to Davis. Accordingly, there was sufficient evidence to allow the jury to conclude that Defendant acted corruptly.

## CONCLUSION

At trial, the government produced evidence that Defendant knowingly passed information about Operation Five Leaf Clover to the subjects of that investigation with the intent to frustrate the Chicago Police Department and the Drug Enforcement Administration investigation into the Conservative Vice Lord's heroin trafficking activities in Chicago's Douglas Park neighborhood. This evidence is sufficient to support the jury's finding of guilty for the charge of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). Therefore, Defendant's Rule 33 post-trial motion for a new trial is denied.

IT IS SO ORDERED

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 19, 2017